750 So.2d 717 (2000)
Andrew BROSE, Appellant/Cross-Appellee,
v.
Mary Ann J. BROSE, Appellee/Cross-Appellant.
No. 2D98-4117.
District Court of Appeal of Florida, Second District.
January 21, 2000.
Stephen C. Patrinostro, Lakeland, for Appellant/Cross-Appellee.
Raymond J. Rafool, Winter Haven, for Appellee/Cross-Appellant.
SALCINES, Judge.
Andrew Brose, the former husband, appeals the order temporarily modifying alimony. He asserts that the trial court should have further reduced or suspended his obligation to pay alimony. Additionally, he maintains that the trial court erred when it ordered the sale of his homestead *718 property. On cross-appeal, Mary Ann J. Brose, the former wife, contends that the trial court erred when it reduced the alimony obligation. We affirm.
The parties' twenty-nine year marriage ended in divorce on June 24, 1993. The final judgment set forth specific lump sum alimony as well as permanent periodic alimony obligations which the former husband was to pay to the former wife. A significant aspect of the awards made to the former wife in the final judgment involved the business owned by the former husband and two other partners. Indeed, in order to protect her interest, the former wife was awarded a lien against the former husband's stock in that company.
In 1995, the former husband filed for bankruptcy protection and failed to make his lump sum and permanent periodic alimony payments. In the context of the bankruptcy proceeding, the former wife renegotiated various terms of the final judgment of dissolution. While the former wife made many financial concessions, significantly, she also agreed to release the lien she held against the former husband's stock in his business. During the period of time in which the former husband was renegotiating these obligations with his former wife, he and his partners were secretly negotiating the sale of the business. Without informing the former wife, he entered into a stock purchase agreement to sell his interest in the business, which had been released from the former wife's lien, and received $1,100,000.00. He then purchased a home located in Belleair Shores, Florida, for which he paid $860,000.00 in cash.
The former husband remained in the employ of the company which had purchased his business and made the permanent periodic alimony payment of $5,000.00 monthly as required by the new settlement agreement and stipulation with the former wife. However, on August 22, 1997, the former husband's annual salary was reduced, and on November 17, 1997, he was notified that his employment was retroactively terminated effective November 1, 1997.
The former husband filed a petition for downward modification of alimony on December 31, 1997, and requested a complete termination of his obligation to pay the former wife permanent periodic alimony. The former wife filed an answer and counterpetition to enforce the settlement agreement and stipulation. The trial court entered a written order in which it made the specific finding that the former husband had taken the bulk of the net proceeds from the sale of his stock and purchased the Belleair Shores property in order to insulate his net worth in a claimed homestead property since he was prohibited from filing for any type of bankruptcy protection until the year 2000.
The trial court concluded that the former husband unintentionally set up his current unemployment situation and granted his petition on a temporary basis. The alimony obligation was temporarily reduced from $5,000.00 to $3,000.00 a month retroactive to January 1, 1998, which reduced his arrearages for the months of February through September 1998, from $40,042.00 to $22,042.00. Further, the trial court abated the alimony obligation for three months until January 1, 1999. The court required the former husband to make immediate arrangements to begin generating income with which to pay the alimony obligation and any outstanding arrearage "by the end of the year or he shall place his Belleair Shores home on the market and use his best efforts to sell it by January 1, 1999."
The facts in the present case are analogous to those found in Gepfrich v. Gepfrich, 582 So.2d 743, 744 (Fla. 4th DCA 1991), in which the appellate court held that there had been an implicit ruling by the trial court that the husband was attempting to use the homestead exemption laws as an instrument to defraud his wife and to escape his honest debt to her. The former husband in the present case has *719 maintained a pattern of behavior in which he continuously has been in arrears for the payment of alimony. When he has been summoned to appear in court to explain why he has not paid his obligation, he has failed to appear. On numerous occasions, the former husband has remitted the arrearage funds due only after he has been threatened with imprisonment. The former husband has filed false financial affidavits with the trial court and has admitted to the falsity of these affidavits when he has been confronted in open court with documentary evidence disputing the statements he has filed. This behavior further supports the conclusion that the former husband has been engaging in a continuing scheme to defraud the former wife.
As the supreme court noted long ago, the homestead exemption is not generally construed to defeat obligations for family support. "[T]he exemption statute will not, unless the contrary intention is clearly shown, be construed to enable the husband to claim its benefit against the very persons to whom he owes the obligation of support and maintenance, ... to construe the statute otherwise would, at least in part, defeat its avowed object." Anderson v. Anderson, 44 So.2d 652, 655 (Fla.1950).
Accordingly, we affirm the trial court's order which requires the former husband to generate income to pay his alimony obligation and outstanding arrearages or to place his Belleair Shores house for sale. The remaining arguments raised by the former husband and the former wife lack merit. We affirm the trial court's order.
Affirmed.
CAMPBELL, A.C.J, and BENNETT, ROBERT B., Jr., ASSOCIATE JUDGE, Concur.